WILLIAMS v. STATE.

(Division B. April 15, 1940.)

[195 So. 334. No. 34051.]

**S. R. King**, of Durant, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellant, Ellis Williams, was indicted, tried and convicted on a charge of murder, at the October, 1939, term of the Circuit Court of Holmes county, and sentenced to life imprisonment in the state penitentiary; from which judgment an appeal was taken to this Court.

The appellant was charged with the killing of one Dock Branch, as they, in company with others, walked along a road in Holmes county in the night. It appears that the appellant passed several of the party—at least three—and on overtaking Dock Branch accosted him about a knife belonging to him, which he claimed that Branch had. Branch denied having it in his possession, whereupon the appellant struck him with a stick of oak or hickory, about the size of a chair leg; and when he fell the appellant struck him on the head with the stick about twice, inflicting wounds which caused his death.

It seems that the appellant and Branch and several of the witnesses had been engaged in a crap game at a settlement known as Emory, in Holmes county. It is claimed that the night was dark, with a mist or drizzling rain. All three of the eyewitnesses for the state testified emphatically that the appellant struck the deceased when the latter was making no move against him. But the witnesses seem to have been ignorant, and in the course of the examination their testimony varied in some details not material to the issue being tried. They all agreed that the appellant struck the deceased,

that he fell, and that the appellant struck him after he was down, and that he was too badly injured to talk. Some of the eyewitnesses went to a place near-by for a white man to come to the aid of the deceased; and this man took the deceased to the doctor, and then to his home.

When the deceased was found, there was no knife in his hand, or near the scene of the difficulty, from which place he seemed to have crawled away some little distance into a corn field. According to the testimony of the witnesses he had nothing in his hand.

The defendant did not deny striking the deceased, but contended that he did so in self-defense, to prevent what he thought was an effort on the part of the deceased to cut him. The defendant, appellant here, said that he went to the crap game; that he asked the deceased to lend him a nickel on his knife; that he took the nickel and handed his knife to the deceased; that after the crap game broke up they all left together; that he went to the witness for the state, Cap Skinner, and asked for the knife, and was told that Dock Branch, the deceased, had it. He said, " 'Dock, you better give me my knife,' and he said 'I don't have to give it to you' and I said 'Well, give me 15¢' and he made a break and said 'I will give you what you don't want and give it to you now.' " The appellant testified that he then hit the deceased, but that it was dark, and he couldn't see where the blow fell; that he struck him twice and then turned and ran; that the stick was one he sometimes used in walking, and was hickory—not oak. That the first blow did not stop the deceased, and that he, the appellant, struck him a second time on the head—where he did not know.

The wounds sustained by the deceased were described by a physician, and shown to have caused his death.

At the close of the testimony the appellant asked for a peremptory instruction, on the theory, apparently, that since the testimony showed the night to have been

dark and rainy, it was practically impossible for the state's witnesses to have seen the situation about which they testified; that their testimony was in conflict with natural laws, and therefore palpably false and impossible of belief.

Of course it cannot be said that a person cannot see after he has been in the dark long enough for his pupils to dilate—it is at least a question for the jury, on the evidence, to decide whether the testimony of the witnesses for the state as to what they had seen was credible. Ordinarily a person who had been in the dark for any length of time can see to some extent, the range of vision depending upon the degree of darkness, and, the ability of the human eye to adjust itself thereto.

We find no merit in the contention that the evidence was insufficient, and that the testimony for the state was in conflict with natural laws. It was, of course, for the jury to decide whether they believed the testimony of the witnesses for the state, or the version of the affair given by the appellant.

We have examined the instructions complained of by the appellant, the principles of which have been dealt with in previous cases, and find no reversible error.

The judgment of the court below is accordingly affirmed.

Affirmed.